UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GUOHUA LIU, individually and on behalf of all
others similarly situated,

                Plaintiffs,

            - against -

ELEGANCE RESTAURANT FURNITURE CORP.
d/b/a ELEGANCE MANUFACTURING;
C.T. TSE; and JOHN DOE AND JANE DOE #1–10,

                Defendants.
-------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
15-CV-5787 (RRM) (SMG)

ROSLYNN R. MAUSKOPF, United States District Judge.

On October 7, 2015, plaintiff Guohua Liu commenced this action alleging that his former employer, Elegance Restaurant Furniture Corp. ("Elegance"), committed various violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). (*See* Compl. (Doc. No. 1); Am. Compl. (Doc. No. 13).) Specifically, Liu alleges: (1) he is owed overtime wages under the FLSA and NYLL; (2) Elegance failed to provide requisite wage notices and pay statements under the NYLL; and (3) Elegance retaliated against Liu for filing the instant lawsuit in violation of the FLSA and NYLL. The parties have cross-moved for partial summary judgment. (*See* Pl. Mot. (Doc. No. 26); Def. Mot. (Doc. No. 36).) Liu moves for summary judgment as to his NYLL wage notice and pay statement claims. Elegance moves for summary judgment on Liu's FLSA overtime and retaliation claims.[1]

For the reasons stated herein, Elegance's motion is denied as to Liu's FLSA retaliation claim, and granted as to Liu's FLSA overtime claims and for all overtime claims arising out of conduct occurring after March of 2014. Liu's motion is denied as to his NYLL wage notice and pay statement claims.

---

[1] Neither party moved for summary judgment on Liu's NYLL wage claims.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed and taken from the parties' Local Rule 56.1 Statements. Elegance is a restaurant furniture manufacturing business located at 228 40th Street in Brooklyn, New York. (Pl. 56.1 (Doc. No. 30) at ¶¶ 1, 4.) The parties dispute when Liu began working at Elegance, but, at a minimum, he was a manufacturing worker there from 2012 to September 29, 2015. (Pl. 56.1 at ¶¶ 12–13; (Def. 56.1 (Doc. No. 39) at ¶ 1).) Throughout Liu's employment, defendant C.T. Tse was the only manager and executive officer of Elegance. (Pl. 56.1 at ¶¶ 3–4.) In that capacity, Tse was on-site at Elegance every day. (*Id.* at ¶ 11.) Tse had a number of responsibilities at Elegance, including: (1) hiring and firing; (2) setting employee work schedules; (3) determining compensation; (4) maintaining employment records; and (6) setting payroll policy. (*Id.* at ¶¶ 5–9.) The parties agree that based on those responsibilities, Tse controlled the terms and conditions of Liu's employment. (*Id.* at ¶ 10.)

Unlike the typical FLSA case, the core dispute here centers not on the number of hours Liu worked per day, but on the number of days he worked per week. While the parties agree that Liu worked eight-hour days throughout his employment, crucially, they dispute whether Liu worked five or six days per week from the beginning of his employment through March of 2014. (Pl. 56.1 at ¶ 14–15; Def. Opp'n 56.1 (Doc. No. 34) at ¶ 15.)

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

2

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *see also Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

3

## DISCUSSION

### I. FLSA Wage and Hours Claim

Elegance argues that it is entitled to summary judgment on Liu's FLSA wage and hour claim because Liu has not satisfied the interstate commerce element of the claim. The minimum-wage and overtime provisions of the FLSA apply only if the employee meets either an "individual coverage" or "enterprise coverage" interstate commerce requirement. *Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 457 (S.D.N.Y. Mar. 2, 2006). That is, the overtime provisions apply only if: (1) "the employee individually was 'engaged in commerce or in the production of goods for commerce,'" ("individual coverage") or (2) "the employer was an 'enterprise' 'engaged in commerce or in the production of goods for commerce,' regardless of whether the individual employee was so engaged" ("enterprise coverage"). *Id.* (quoting 29 U.S.C. § 207(a)(1)). The plaintiff, Liu, bears the burden of establishing FLSA coverage. *See Jian Long Li v. Li Qin Zhao*, 35 F. Supp. 3d 300, 304 (E.D.N.Y. 2014).

#### A. Enterprise Coverage

For purposes of the FLSA, an enterprise engaged in commerce: (1) "has employees handling, selling, or otherwise working on goods or materials that have moved in or produced for commerce" and (2) has "annual gross volume of sales made or business done [of] not less than $500,000." 29 U.S.C. § 203(s)(1). In its motion for summary judgment, Elegance argues that Liu has failed to meet the annual gross volume of sales requirement. Thus, to defeat summary judgment on this claim, Liu "need only demonstrate that there is a genuine issue of material fact regarding whether Defendants' annual gross sales were less than $500,000." *Xiao Dong Fu v. Red Rose Nail Salon Inc.*, No. 15-CV-7465 (KPF), 2017 U.S. Dist. LEXIS 35312 at, *15 (S.D.N.Y. Mar. 13, 2017).

In support of his argument that the gross sales requirement is satisfied, Liu does not rely on any direct evidence of sales. Rather, Liu points to evidence of Elegance's expenditures. It is undisputed that Liu was paid at a daily rate of $110, with an annual salary of approximately $28,600. (Def. 56.1 at ¶ 4). Liu asserts that Elegance had 13 or 14 employees during the relevant time period. (*See* Liu Decl. (Doc. No. 42) at ¶ 17.) Of those employees, Tse testified that around three or four worked full-time. (Tse Dep. (Doc. No. 40-1) at 18.)[2] If those four full-time employees were paid comparably to Liu, their collective annual pay would come to approximately $114,400. If the remaining ten part-time employees were paid half as much, their collective annual pay would come to approximately $143,000. Thus, Liu estimates that Elegance spent approximately $257,400 on employee salary. Liu also notes that Elegance's lease agreement in 2012 was $137,575.37. (*See* Lease (Doc. No. 29-5) at 13.) Therefore, Liu estimates that Elegance spent approximately $394,975.37 on its lease and employee salaries. However, as to actual sales, Liu offers only his own testimony that Elegance's employees were "busy." (*See* Pl.'s Opp'n 56.1 (Doc. No. 44) at ¶ 10.)

In opposing Elegance's motion, Liu argues that evidence of a business's costs can be used to create a material dispute of fact with respect to a business's claimed sales in its tax returns. *See, e.g., Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337 (E.D.N.Y. Sept. 15, 2014) (finding a material dispute of fact where the defendant's stated rent and employee salaries differed from the amount claimed on its tax return, thus calling into doubt the total sales claimed on the tax return). Liu fails to point to any evidence of Elegance's annual sales revenue. In fact, Liu does not dispute that he lacks knowledge of how much Elegance makes in a year, or, more specifically, of the sales or money made from Elegance's customer transactions. (Def. 56.1 at ¶¶ 8–9.) The record

---

[2] For ease of reference, citations to Court documents utilize the Electronic Case Filing System ("ECF") pagination.

is bereft of evidence regarding Elegance's other expenses, tax returns, bank accounts, or any evidence with respect to whether Elegance turned a profit or operated at a loss. Thus, the record as whole contains nothing from which a jury could rule in Liu's favor on $500,000 threshold for gross sales. As such, Liu has not created a genuine dispute of fact for trial.

Even where a plaintiff raises credibility issues with respect to a business's tax returns, he cannot survive summary judgment without affirmative evidence to support gross sales over $500,000. *See, e.g., Zhao*, F. Supp. 3d. at 304 (granting summary judgment where plaintiff shows that tax returns did not credibly report gross sales but offers no "affirmative evidence to support the conclusion that the restaurant's gross sales were more than $500,000 every year.") (internal quotation marks omitted); *Li v. Cheng*, No. 10-CV-4664 (JBW), 2012 WL 1004852, at *5–6 (E.D.N.Y. Mar. 23, 2012) (granting summary judgment where plaintiffs "relied on conclusory testimony and conclusory statements" and "offered no evidence to support" that the defendant business exceeded $500,000 in gross sales). Here, Liu "has presented no cases in which courts actually relied on business expenses information to determine the gross amount of business done by an enterprise during a relevant period." *Ho v. Target Constr. of NY*, Corp., No. 08-CV-4750 (KAM) (RER), 2011 U.S. Dist. LEXIS 33365, at *32 (E.D.N.Y. Mar. 28, 2011) (finding that plaintiff could not meet his establish $500,000 in sales by relying on approximately $260,000 in expenditures).

Even Liu's allegations with regard to Elegance's expenses do not support a triable issue of fact. Liu speculates in his own affirmation that three or four of the 13 or 14 employees he believes worked for Elegance worked full time, and posits that they were paid at a rate comparable to himself. Similarly, he estimates, for this sake of his calculations, that all of the other employees were paid at half that rate. Nothing in the record, or in Liu's own affidavit, provides a basis for these assumptions. Liu "may not rely on mere speculation or conjecture as to the true nature of the

6

facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations omitted).

For the foregoing reasons, Liu fails to create a material dispute of fact as to whether Elegance's gross annual sales exceeds $500,000, a necessary element to establish enterprise coverage under the FLSA.

### B. Individual Coverage

"Where a business fails to meet the enterprise requirements of the FLSA . . . a plaintiff's FLSA claim can survive summary judgment only if the plaintiff was engaged in commerce or in the production of goods for commerce." *Xelo v. Mavros*, No. 03-CV-3665 (NG), 2005 U.S. Dist. LEXIS 21588, at *2 (E.D.N.Y. Sept. 29, 2005). An employee engages in commerce by "performing work involving or related to the [interstate] movement of persons or things . . . ." 29 C.F.R. § 779.103. In order to meet the individual coverage requirement, engagement in commerce must constitute "a substantial part of the employee's work." *Boekemeier v. Fourth Universalist Soc'y*, 86 F. Supp. 2d 280, 287 (S.D.N.Y. Feb. 15, 2000).

Here, Liu fails to point to any evidence that the furniture he manufactured at Elegance was moved in interstate commerce. Rather, Liu affirms that the tools and materials he used at Elegance were imported from China. (*See* Liu Decl. (Doc. No. 42) at ¶ 18.) However, "that he may have regularly worked with goods that originated from outside of New York does not qualify him as an employee engaged in commerce." *Yupa v. Country Stone & Fence Corp.*, No 14-CV-7384 (DRH), 2017 U.S. Dist. LEXIS 361, at *8 (E.D.N.Y. Jan. 3, 2017) (finding no individual coverage where plaintiff produced and installed backyard furniture from goods that originated outside New York); *accord McLeod v. Threlkeld*, 319 U.S. 491, 494 (1943) ("[E]mployees who handle goods after acquisition by a merchant for general local disposition are not [engaged in commerce]."); *Walker v.*

7

*Interfaith Nutrition Network, Inc.*, No. 14-CV-5419 (DRH), 2015 WL 4276174, at *4 (E.D.N.Y. July 14, 2015) (finding that merely using equipment and materials that originated out of state was insufficient to sustain a claim based on individual coverage).

As to whether he was engaged in the production of goods for commerce, Liu notes that "there is [a] high likelihood that the furniture produced by Defendants moved through interstate commerce," but offers no evidence in support of that fact. (*See* Opp'n (Doc. No. 41) at 8.) Rather, Liu notes that "[i]f given the opportunity, plaintiff will prove that Defendants meet" the individual coverage prong. (*Id.*) Yet, the Court already granted Liu such an opportunity through the discovery process. The parties have now completed discovery, and no facts in the record support that Elegance's products ever left New York. Thus, Elegance has demonstrated that Liu "has failed to marshal a 'genuine issue of material fact' concerning his individual coverage." *Zhao*, F. Supp. 3d. at 306 (quoting *Salahuddin*, 467 F.3d at 273).

As no issues of material fact remain as to either individual or enterprise coverage, summary judgment is warranted as to Liu's FLSA wage and hour claims.[3]

## II. FLSA Retaliation

Elegance moves for summary judgment on the grounds that Liu's FLSA employment retaliaion claim should be dismissed for failure to provide evidence of any adverse employment action. Liu responds that Tse retaliated against him by sending him text messages threatening to alert authorities to his immigration status. For the reasons stated herein, Elegance's motion for summary judgment on Liu's FLSA retaliation claim is denied.

A plaintiff alleging retaliation under the FLSA "must first establish a prima facie case of retaliation by showing: "(1) participation in protected activity known to the defendant, like the filing

---

[3] As Liu's FLSA wage claims do not survive summary judgment, the Court need not reach the issue of whether such claims were "willful."

of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010). A plaintiff meets the "adverse employment" factor if the action "'might have dissuaded a reasonable worker from making or supporting'" similar charges. *Mullins*, 626 F.3d at 53 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). While typically an adverse employment action must occur during the tenure of a plaintiff's employment, "in some circumstances plaintiffs can bring retaliation claims against former employers for post-employment conduct." *Jian Zhong Li v. Oliver King Enters., Inc.*, No. 14-CV-9293 (VEC), 2015 WL 4643145, at *3 (S.D.N.Y. Aug. 4, 2015); *see Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008) (finding that an employer's baseless claims that were designed to deter former employees from seeking legal redress can constitute materially adverse retaliatory action).

Here, Liu argues that post-employment statements and text messages threatening to report him to government immigration services "might have dissuaded a reasonable worker" from engaging in protected activity – namely, bringing the instant suit. *See Burlington N.*, 548 U.S. at 68. Liu provides copies of text messages that Tse sent to him after the commencement of this action. One message suggests that Tse could find Liu work at the "Bureau of Immigration." (*See* Ex. 4 (Doc. No. 43-4).) Another suggests that Tse conferred with Liu's counsel about his immigration status and that it "is better to resolve the matter privately." (*Id.*) Liu also avers that immediately before the initial conference in this case, Tse approached him and threatened that "wherever you go, I can find you." (*See* Liu Dep. (Doc. No. 43-5) at 67.)[4]

---

[4] Elegance argues that the Court should not consider Exhibits 3 and 4 to Liu's opposition motion (Doc. Nos. 43-3, 43-4) and that sanctions should issue because Liu failed to produce these documents during discovery. Exhibit 4 contains copies of the text messages that purportedly threatened Liu with deportation. Contrary to Elegance's contentions, the use of the text messages does not amount to "'sandbagging' of a party with new evidence . . . on a motion." *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 68 (E.D.N.Y. 2012). Elegance has been aware that Liu intended to rely on these

9

"District courts in this Circuit have held that reporting or threatening to report an undocumented immigrant to immigration authorities constitutes a retaliatory employment action under the FLSA." *Santos v. ET & K Foods, Inc.*, No. 16-CV-7107 (DLI), 2017 U.S. Dist. LEXIS 100495 at, *8 (E.D.N.Y. June 27, 2017); *see Aponte v. Modern Furniture Mfg. Co., LLC*, No. 14-CV-4813 (ADS), 2016 WL 5372799, at *18 (E.D.N.Y. Sept. 26, 2016) ("[T]hreats to report plaintiff and his son to the immigration authorities would, by themselves, dissuade a reasonable employee from participating in this lawsuit . . . ."); *Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 130, 136 (W.D.N.Y. 2003) (finding that plaintiffs established a prima facie case of retaliation under the FLSA where former employer reported them to Immigration and Naturalization Service after learning of their FLSA action).

Given that Tse suggested on multiple occasions that Liu's immigration status was imperiled by this lawsuit, a reasonable worker in Liu's shoes may have been dissuaded from bringing this action. Accordingly, summary judgment as to Liu's FLSA retaliation claim is denied.

### III. WTPA Wage and Hour Claims

Liu moves for summary judgment asserting that Elegance failed to provide wage and hour notices to its employees as required by New York's Wage Theft Prevention Act ("WTPA").[5] The WTPA requires, *inter alia*, that employers provide written notice detailing the regular and overtime

---

text messages at least since Liu referenced them in the Amended Complaint. (*See* Am. Compl. at 6.) In their individual document requests, Elegance requested all documents related to Liu's retaliation claim. (*See* IDR (Doc. No. 40-3) at 16.) Liu objected, responding that the documents, if any, were "equally accessible by defendants or are within [d]efendants' possession." (*Id.*) Elegance did not move to compel, but if it had "[c]ourts have declined to compel production of documents in the hands of one party when the material is equally available to the other party from another source." *SEC v. Strauss*, No. 09-CV-4150 (RMB) (HBP), 2009 U.S. Dist. LEXIS 101227, at *30 (S.D.N.Y. Oct. 28, 2009) (collecting cases). Accordingly, Elegance's motion for sanctions is denied.

[5] Defendants argue that if the Court dismisses Liu's federal claims brought under the FLSA, it also should decline to exercise supplemental jurisdiction under 28 U.S.C. §1367. However, as noted below, the Court has not dismissed all of Liu's claims under the FLSA, and thus has not "dismissed all claims over which it has original jurisdiction," such that the Court could decline supplemental jurisdiction. 28 U.S.C. §1367(c).

hourly pay rate, the regular pay day, and basic information about the employer. *See* NY CLS Labor § 195. However, the "complete and timely payment of all wages due" is an affirmative defense to a wage and hour notice violation. NY CLS Labor § 198 (1-b).

Here, a material dispute of fact exists as to whether Elegance made a complete and timely payment of all wages due to Liu. If, as Elegance contends, Liu worked only five days per week, then he would have been paid all wages due, and Liu's wage and hour notice claim would fail. However, the instant dispute centers on whether Liu worked a five or six-day week.[6] If Liu worked a six-day week, Elegance would owe overtime payment under the WTPA. Accordingly, summary judgment as to Liu's WTPA wage and hour notice claims is denied.[7]

---

[6] In their briefing, the parties agree that Liu worked 40 hours per week beginning in March 2014, and thus, no overtime pay was due from that point forward.

[7] Liu also argues that both Elegance and Tse are employers under the FLSA and NYLL. *See Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984) (outlining the "economic reality test" for what constitutes an employer under the FLSA); *Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) ("District courts in this Circuit have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA."); *Glatt v. Fox Searchlight Pictures, Inc.*, 293 F.R.D. 516, 526 (S.D.N.Y. 2013) ("The NYLL's definitions are nearly identical to the FLSA's."). Here, Elegance admits that it was Liu's employer, and it does not oppose Liu's motion with respect to Tse. Further, the undisputed facts demonstrate that Tse meets each of the four factors of the economic reality test.

## CONCLUSION

For the reasons set forth herein, Elegance's motion for partial summary judgment (Doc. No. 36) is granted as to Liu's FLSA overtime claims and denied as to Liu's FLSA retaliation claim. Plaintiff's motion for partial summary judgment (Doc. No. 26) is denied as to his NYLL wage notice and pay statement claims. Also remaining are Liu's NYLL overtime claims, against which no party moved.

This case is re-committed to Magistrate Judge Gold for all further pre-trial proceedings.

SO ORDERED.

Dated: Brooklyn, New York
September 25, 2017

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge